IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARIAN O'CONNOR, | ) | CASE NO.  4:10CV0338 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | |
| JOHN KELTY, et al., | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

*Pro se* Plaintiff Arian O'Connor brings this action under 42 U.S.C. § 1983 against

Defendants Youngstown, Ohio Police Officers John Kelty, Jose Morales, Louis Ciavarelli, Joe

DeMatteo, John Patton, and Officer Andrews, Youngstown Police Chief Jimmy Hughes, Akron,

Ohio Police Officers Michael Shaeffer and James Pasheilich, and Summit County, Ohio

Assistant Prosecutor Gregory Peacock.  He asserts claims for malicious prosecution, false arrest,

false imprisonment, gross negligence, criminal negligence, intentional infliction of emotional

distress, obstruction of justice, excessive bail, and slander in violation of the Fourth, Eighth, and

Fourteenth Amendments of the United States Constitution.

I.      **Factual Background**

The following facts were ascertained from Plaintiff's Complaint (Doc. 1).  Javan Rogers ("Rogers") was kidnapped in Akron, Ohio on August 26, 2002.  His body was found in Youngstown, Ohio the next day.  A "MERC" 9 mm shell casing was recovered near his body and taken to the Youngstown crime lab.  On August 28, 2002, Youngstown police officers responded to a call about the theft of a Ruger 9 mm firearm.  About two weeks later, Rosalyn Turner ("Turner"), an acquaintance of Plaintiff, alleged that Plaintiff shot at her while driving by her home.  A police officer found a shell casing that was taken to the Youngstown Police Department property room.  The type and brand of casing was never documented.

Plaintiff was subsequently arrested in Pennsylvania for discharging a firearm into a habitat and felonious assault against Turner.  The stolen Ruger 9 mm firearm was found on the side of the road during the arrest.  The gun was test-fired in Pennsylvania and the shell was sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI").  The shell casing from the Turner case was placed in an envelope marked "A-MERC" and taken from the Youngstown Police Department to BCI, along with the shell from the Rogers homicide.  The casings were to be compared with both each other and the shell retrieved from Plaintiff's gun.  The result of the test showed that the shell from the Rogers case, but not the shell from the Turner case, matched the test-fired shell from Plaintiff's gun.  Once the shells were returned to Youngstown, suspicion arose that they had been switched, as Plaintiff had been seen with the Ruger 9 mm at the Turner shooting.

Meanwhile, Plaintiff pled guilty to the firearm charge in Pennsylvania in order to avoid a four-level enhancement for the gun used in the Rogers homicide.  Plaintiff was sentenced to 69 months imprisonment.  The Turner charges against Plaintiff were dismissed in 2005 because his

speedy trial rights were violated. On October 17, 2007, after Plaintiff completed his sentence, he was arrested by the Akron Police Department and indicted for the aggravated murder of Rogers, kidnapping, criminal gang activity, and various firearm offenses.  Plaintiff contends that he was not informed of evidence that the owner of the stolen Ruger 9 mm stated that he was in possession of the gun fourteen hours after Rogers' body was found.  The BCI official also told the prosecutor that a different shell was fired from Plaintiff's gun and not the "MERC" as previously determined.  A Youngstown police officer stated that only one shell casing, the "MERC," was found at the Roger's homicide scene.  When the Turner case shell was retrieved, the "MERC" shell was found in the envelope.  All charges against Plaintiff were dismissed with prejudice on April 7, 2008.  Plaintiff claims his constitutional rights and state law were violated because of a mistake in handling evidence, causing him to be arrested and indicted for a crime he did not commit.

## II.      Legal Analysis

*Pro se* pleadings shall be liberally construed.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the district court may dismiss an action *sua sponte* if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).  For the following reasons, the Court finds several of the claims asserted in this action to satisfy these criteria.

First, all defendants are sued in their official and individual capacities.  In general, official-capacity suits represent another way of pleading an action against the entity of which an officer is an agent.  *Ky. v. Graham,* 473 U.S. 159, 165 (1985); *Everson v. Leis*, 556 F.3d 484,

493 (6th Cir. 2009).  In such instance, a plaintiff must show that the alleged violation of his or her constitutional rights resulted from acts representing official policy or custom adopted by the city.  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245-46 (6th Cir. 1989).  Plaintiff has not alleged a violation of any local custom or policy.  Therefore, Officers John Kelty, Jose Morales, Louis Ciavarelli, Joe DeMatteo, John Patton, Michael Shaeffer, and James Pasheilich, Officer Andrews, and Police Chief Jimmy Hughes, are dismissed as defendants in their official capacities.

Second, Plaintiff alleges that Assistant Prosecutor Peacock ("Peacock"):  (1) set his bail at two million dollars while in possession of exculpatory evidence showing there was no probable cause to continue criminal proceedings against Plaintiff; (2) kept the theft report of the gun and other discovery material from Plaintiff; (3) sought an indictment from a grand jury while in possession of proof that Plaintiff did not possess the murder weapon; and (4) caused Plaintiff's name and picture to be printed in area newspapers.  Plaintiff asserts that such action constitutes excessive bail, malicious prosecution, false imprisonment, and denial of substantive due process in violation of the Fourth, Eighth, and Fourteenth Amendments.  Plaintiff also alleges emotional distress and slander.

Prosecutors are absolutely immune from liability under Section 1983, provided their conduct is intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  "The analytical key to prosecutorial immunity . . . is advocacy-whether the actions in question are those of an advocate." *Skinner v. Govorchin,* 463 F.3d 518, 525 (6th Cir. 2006) (citations and internal quotation marks omitted).  Absolute immunity shall also attach to administrative acts necessary for a prosecutor to initiate a criminal

4

proceeding.  *Webb v. Greene County Sheriff's Office,* 494 F.Supp.2d 779, 791 (S.D. Ohio 2007)

(citing *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) (holding that a prosecutor falls

outside the shade of prosecutorial immunity where he switches from presenting the charging

document to vouching personally for the truth of the contents of the document)).  The Sixth

Circuit has held that prosecutors are immune for the following conduct:  (1) malicious

prosecution, *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (citing *Burns v. Reed*, 500

U.S. 478, 485 n. 4 (1991)); (2) appearances at probable cause and grand jury hearings, *id.* (citing

*Burns,* 500 U.S. at 487, n. 8); (3) professional evaluation of evidence assembled by police and

appropriate presentation of that evidence at trial or before the grand jury, *id.* (citing *Buckley v.*

*Fitzsimmons,* 509 U.S. 259, 273 (1993)); (4) preparation of witnesses for trial, *id.* (citing

*Higgason v. Stephens,* 288 F.3d 868, 878 (6th Cir.2002)); and (5) knowing presentation of false

testimony at trial, *id.* (citing *Imbler,* 424 U.S. at 430; *Buckley,* 509 U.S. at 267 n. 3).  Prosecutors

also have common law absolute immunity concerning state law claims.  *Webb,* 494 F.Supp.2d at

797; *Lesinski v. City of Steubenville*, 2005 WL 1651737 *10 (S.D.Ohio Jul 13, 2005) (citing

*Willitzer v. McCloud,* 6 Ohio St.3d 447, 449 (1983) (recognizing possible application of

prosecutorial immunity in context of state law claim)).

There is no indication in the complaint that Peacock acted outside the scope of his

professional responsibilities.  As discussed herein, pleading official capacity is another way of

stating a claim against an entity of which a defendant is an agent.  *Graham,* 473 U.S. at 165.

Prosecutors act as state agents when prosecuting criminal charges.  Consequently, a suit against

a prosecutor in his official capacity is to be treated as a suit against the state.  *See Will v. Mich.*

*Dep't of State Police,* 491 U.S. 58, 71 (1989) (noting that a suit against a state official in his

official capacity is no different than a suit against the state itself); *Pusey v. City of Youngstown,*

5

11 F.3d 652, 657-58 (6th Cir.1993) (noting that a county prosecutor, as an officer of the court, is acting on behalf of the state when prosecuting state charges).  Under the Eleventh Amendment, a state cannot be sued in federal court without its consent.  *Seminole Tribe of Fla v. Fla.*, 517 U.S. 44, 54 (1996).  Therefore, Peacock is dismissed as a defendant in both his official and individual capacities.

Third, Plaintiff asserts that, by telling an area newspaper that charges against Plaintiff should have been dismissed due to a mistake, Police Chief Hughes ("Hughes") implied that there was physical evidence other than the "fabricated" evidence tying Plaintiff to the Rogers homicide.  Plaintiff further alleges that the comment implied that he beat the murder charge on a technicality.  Plaintiff sued Hughes in his official and individual capacities for defamation, which is a state law claim.  There is no indication that Hughes participated in any manner implicating the federal claims.  The Sixth Circuit, in *Hays v. Jefferson County, Ky.,* held that a supervisor must have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.  668 F.2d 869, 874 (6th Cir. 1982).  Moreover, failure to supervise, control, or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999).  Therefore, all federal claims against Hughes are dismissed.

Fourth, Plaintiff asserts that Defendants' actions constitute gross negligence in that he was denied substantive due process of law in violation of the Fourteenth Amendment.  Allegations of gross negligence cannot establish a constitutional violation.  *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007); *Rumsey v. Mich. Dept. of Corr.*, 327 F.Supp.2d 767, 777 (E.D. Mich., 2004).  Plaintiff may have a state rather than federal cause of action for

gross negligence.

Therefore, all claims against Officers John Kelty, Jose Morales, Louis Ciavarelli, Joe DeMatteo, John Patton, Michael Shaeffer, James Pasheilich, Officer Andrews, Hughes, and Peacock in their official capacities are dismissed.  The claim alleging gross negligence in violation of substantive due process is also dismissed.  The action remains pending against the police officers in their individual capacities on the federal claims and as to the state law allegations.  Hughes remains a defendant on the defamation claim only.[1]


IT IS SO ORDERED.


Dated:  July 2, 2010                    /s/  John R. Adams
                                        JOHN R. ADAMS
                                        UNITED STATES DISTRICT JUDGE

---

[1] R.C. § 2744.03(6) provides in pertinent part:

> In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

Plaintiff has alleged that Defendants' conduct was malicious.