# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ARIAN O'CONNOR, | ) | CASE NO. 4:10 CV 338 |
|  | ) |  |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JOHN KELTY, et al., | ) | **ORDER AND DECISION** |
|  | ) |  |
| Defendants. | ) |  |

This matter appears before the Court on the Motion for Summary Judgment filed on June 4, 2012, by Defendants Sergeant John Kelty, Sergent Jose Morales, Officer Joe DeMatteo, Officer John Patton, Officer Louis Ciavarella, Officer Andrews, and Police Chief Jimmy Hughes (collectively, the "Defendants") (Doc. 38). Plaintiff Arian O'Connor did not timely oppose the Defendants' motion.[1] The motion is ripe for the Court's review.

## I.  Factual Background and Procedural History

On August 27, 2002, Javan Rogers was found murdered in Youngstown, Ohio. Rogers had been kidnapped from his residence in Akron, Ohio. Defendants Sergeant Jose Morales and Officer Lou Ciavarella investigated the crime scene and recovered a .9mm shell casing. The shell casing was identified as a MERC brand casing. Officer Ciavarella logged this shell casing in the Crime Lab Evidence Log.

In early September 2002, Rosalyn Turner notified the Youngstown Police Department (YPD) that her acquaintance, Arian O'Connor (Plaintiff), had fired a gun at her while driving

---

[1] On December 17, 2012, Plaintiff filed a motion to stay these proceedings until he could hire new counsel to respond to the pending motion for summary judgment. Doc. 39. Defendants filed the pending motion for summary judgment on June 4, 2012. Plaintiff waited over six months before essentially seeking an extension of time to respond to the motion. Plaintiff's request is untimely. Plaintiff's motion is denied.

past her home. Defendant Officer Thomas Andrews investigated the scene and recovered a .9mm shell casing. Officer Andrews did not note the brand of the casing.

On September 9, 2002, Defendant Sgt. John Kelty was assigned to investigate the Turner shooting. Sgt. Kelty asked Defendant Officer John Patton to compare the shell casings recovered from the Turner and Rogers investigations because Plaintiff was a potential suspect in both crimes. No record exists indicating that Officer Patton ever completed the comparison of the shell casings. Officer Patton does not remember if he completed the comparison.

On September 27, 2002, the YPD issued an arrest warrant for Plaintiff on charges relating to the Turner shooting. Officers subsequently arrested Plaintiff and found him to be in possession of a .9mm Ruger firearm. Plaintiff was charged, tried, and convicted of possessing a firearm under disability. Plaintiff was sentenced to 69 months in prison for firearm possession.

On September 30, 2002, Sgt. Kelty requested Plaintiff's firearm for ballistics testing from the Pennsylvania authorities. Sgt. Kelty then made another request for a comparison of the shell casings from the Rogers and Turner investigations. Defendant Officer Joseph DeMatteo performed the comparison analysis, but Officer DeMatteo never produced paperwork regarding his analysis.

On October 3, 2002, Sgt. Morales sent the casing from the Rogers crime scene to the Ohio Bureau of Criminal Investigation and Identification (BCI) to compare it to the casing from the Turner scene. BCI then compared both casings to the firearm that the police had found in Plaintiff's possession upon his arrest. On October 20, 2002, BCI found that Plaintiff's firearm matched the Rogers casing, but not the Turner casing. On November 25, 2002, Sgt. Kelty spoke with the BCI ballistic technician to discuss a possible discrepancy with the Turner shell casing, specifically noting that the Turner casing did not match Plaintiff's firearm even though an

2

eyewitness had placed Plaintiff at the scene of the crime.  The following day Sgt. Kelty and the ballistics technician spoke again.  The technician noted that, as a possible discrepancy, a Remington Peters casing was in the MERC Rogers envelope.  Neither the technician nor Sgts. Kelty or Morales took any further action regarding this matter.  Also, the technician never sent an evidence discrepancy letter regarding the mislabeled envelope and casing in the Rogers matter.

Sergeants Kelty and Morales shortly thereafter observed a discrepancy with the evidence noticing that the casing envelopes from both the Rogers and Turner investigations were marked "MERC," even though one of the casings was a Remington Peters.  Neither Sergeant Kelty nor Sergeant Morales ever followed up with BCI on this matter.  On December 10, 2002, Sgt. Morales received the BCI report concerning the Rogers matter.  The BCI report noted that the casing from the Rogers crime scene was a Remington Peters casing and the casing matched Plaintiff's firearm.  This was the YPD's last involvement of in the Rogers matter until 2008.

Initially, Plaintiff was criminally charged in the Turner shooting, but those charges were dismissed in 2005 due to the State's violation of Plaintiff's right to a speedy trial.  In 2007, the Akron Police Department conducted a search pursuant to a warrant of Plaintiff's residences.  The Summit County Grand Jury subsequently indicted Plaintiff for Rogers' 2002 murder.  The YPD arrested Plaintiff on October 17, 2007.  However, in April of 2008 the trial judge dismissed the indictment without prejudice after prosecutors learned that the shell casing had been mishandled and the ballistics match was improper.  Plaintiff was released from prison in late April of 2008 after completing the remainder of the 69-month sentence from his prior firearm possession conviction.

Shortly thereafter, Lieutenant Rod Foley of the YPD investigated the YPD's handling of

3

the Rogers and Turner shell casings.  After interviewing all of the Defendants named in the present lawsuit, Lieutenant Foley concluded that the shell casings were inadvertently switched as a result of human error and not intentional misconduct.  Moreover, after comparing the shell casings and photographs of the casings at the crime scenes, Lieutenant Foley concluded that an inadvertent switch of the casings had occurred in early October of 2002, prior to when the YPD submitted both casings to the BCI for testing.  The shell casing discovered at the Rogers crime scene was a MERC.  Lieutenant Foley further found a strong possibility that the casing recovered at the Turner scene was a Remington Peters casing. Lieutenant Foley did not find any evidence of conspiracy by the YPD to frame Plaintiff for Rogers' murder, nor did he find intentional misconduct by any of the officers either during the initial investigations or since.  Rather, the switch was solely the result of human error.  The Mahoning County Prosecutor's Office agreed with Lieutenant Foley's findings and found that human error had caused the switch of the shell casings.

Plaintiff filed this suit on February 12, 2010 against the Youngstown Defendants alleging numerous violations of 42 U.S.C. §1983, as well as supplemental state law claims.  In January 20, 2012, this Court granted summary judgment in favor of two former Defendants while simultaneously dismissing claims for slander and intentional infliction of emotional distress against all named Defendants.  The remaining claims include defamation against Chief Hughes, and constitutional violations of the Fourth and Fourteenth Amendments against Sgts. Kelty and Morales, Officers DeMatteo, Patton, Civarella, and Andrews for false arrest, false imprisonment, fabrication of evidence, malicious prosecution, and denial of substantive due process.  Plaintiff also brings the false arrest, false imprisonment, and malicious prosecution actions as state law claims.

4

## II. Law & Analysis

### A. Summary Judgment Standard

Summary judgment creates a burden-shifting framework.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  First, a party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; Fed. R. Civ. P. 56(a).  If the moving party satisfies this burden, then the party nonmoving party must demonstrate to the Court that there are facts genuinely in dispute, and must do so by citing to the record.  Fed. R. Civ. P. 56(c)(1)(a); *See Anderson*, 477 U.S. at 250.  The nonmoving party must show specifically "that there is a genuine issue for trial."  *Id.*  The Sixth Circuit has long held that "mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden."  *Bell v. Ohio State Univ.,* 351 F.3d 240, 253 (6th Cir. 2003), citing *Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273, 1274 (6th Cir. 1974).

Where, as here, a motion for summary judgment is unopposed, the district court at a minimum must review the motion to ensure that the moving party has satisfied its initial burden of demonstrating the absence of a genuine issue of material fact.  *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 407 (6th Cir. 1992).  The court must intelligently and carefully review the legitimacy of the motion, considering the possibility of evidentiary misstatements by the moving party and keeping in mind the context in which the evidence arose.  *Id.*

Notwithstanding the foregoing, the district court properly relies on the facts provided by the moving party once the court is satisfied that the movant has not misrepresented the facts as established by the record as a whole.  *Id.* at 404-09.  The Sixth Circuit has held that nothing in the Federal Rules of Civil Procedure or case law supports an argument that the district court must conduct its own probing investigation of the record in order to discover an issue of material fact

when a summary judgment motion is unopposed.  *Id.* at 405-06.  Thus, the district court is justified in relying on uncontested facts set forth in a summary judgment motion.  *Id.* at 404-09.

### B.  Substitution of Proper Party

Before deciding the merits of Defendants' Motion for Summary Judgment, this Court first addresses an issue of procedural deficiency.  Federal Rule of Civil Procedure 25(a) provides in relevant part:

> **(1) *Substitution if the Claim Is Not Extinguished*** If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Here, Defendant Officer Joseph D. DeMatteo passed away on April 15, 2011.  On January 25, 2012, counsel for Officer DeMatteo filed a suggestion of death on the record on behalf of the decedent.  More than 90 days have passed since counsel for Officer DeMatteo filed the notice of suggestion of death and Plaintiff has failed to substitute the party.  Therefore, pursuant to Fed. R. Civ. P. 25, Defendants' Motion for Summary Judgment as to Plaintiff's defamation claim against Officer DeMatteo is granted.  All of Plaintiff's claims against Officer DeMatteo are dismissed.

### C.  42 U.S.C. §1983 Claims & Qualified Immunity

Plaintiff also claims constitutional violations of the Fourth and Fourteenth Amendments against Sgts. Kelty and Morales, and Officers Patton, Ciavarerlla, and Andrews for false arrest, false imprisonment, malicious prosecution, fabrication of evidence, and denial of substantive due process.  Plaintiff brought these five claims under 42 U.S.C. §1983, which permits civil action to be taken against state actors who violate a recognized federal or constitutional right.

Defendants assert the affirmative defense of qualified immunity.  Qualified immunity protects an official from liability if the official's conduct does not violate "clearly established"

statutory or constitutional rights that a reasonable person would have known were in existence. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The U.S. Supreme Court has stressed that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.,* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 535 (1985)). Rather, it means that, "in light of pre-existing law the unlawfulness must be apparent." *Creighton,* 483 U.S. at 640.

A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992). However, the plaintiff bears the ultimate burden of proving that the defendants are not entitled to a qualified immunity defense. *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). "[T]he burden is on the plaintiff to allege and prove that the defendant violated a clearly established constitutional right." *Spurlock v. Satterfield,* 167 F.3d 995, 1005 (6th Cir.1999).

In *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the U.S. Supreme Court held that a court must first determine whether there is a violation of a constitutional right before addressing the issue of whether the right was clearly established. Although this approach may be appropriate in many cases, it is no longer imperative. The Supreme Court altered this approach in *Pearson v. Callahan,* 555 U.S. 223, 236 (2009), by holding that lower courts are now permitted to determine which prong of the immunity analysis to address first. *Id.* at 821. Moreover, some panels of the Sixth Circuit have added a third step that requires "the court to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively

unreasonable in light of the clearly established right." *Grawey v. Drury,* 567 F.3d 302, 309 (6th Cir. 2009).

### 1. §1983: False Arrest & False Imprisonment

Defendants correctly indicate in their Motion for Summary Judgment that Plaintiff's claims of false arrest and false imprisonment are time barred by O.R.C §2305.10, which sets a two-year limitations period after the cause of action accrues. The U.S. Supreme Court has held that when a state, like Ohio, has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations. *Owens v. Okure,* 488 U.S. 235, 249-50 (1989). Following the Supreme Court's holding in *Okure,* the Sixth Circuit held that the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in O.R.C § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). Although state law provides the statute of limitations for §1983 actions, federal law governs when that statute of limitations begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). For false arrest, the cause of action accrues the moment that an arrestee "becomes detained pursuant to legal process." *Id.*, at 397.

In this case, the YPD arrested Plaintiff on October 17, 2007. Therefore, the two-year limitations period in O.R.C. §2305.10 started to run on October 17, 2007 and expired on October 17, 2009. Plaintiff filed the Complaint in the present case in February of 2010. Therefore, Plaintiff failed to file his claim for false arrest against the Youngstown Defendants before the expiration of the limitations period. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's §1983 false arrest claim is granted.

A cause of action for false imprisonment accrues upon the termination of the confinement, i.e. when the detainee receives issuance of process or is arraigned. *Id.* at 384. In the present case, Plaintiff was arraigned on an indictment for murder on November 8, 2007. Therefore, Plaintiff had two years from November 8, 2007 to file his false imprisonment claim. Plaintiff filed the Complaint in the present case in February of 2010, three months after the statutory period had expired. Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's §1983 false imprisonment claim is granted.

This Court would also grant Defendants' summary judgment on the merits of Plaintiff's false arrest and imprisonment claims. Plaintiff asserts that he was falsely arrested and imprisoned by the Youngstown Defendants. Under federal law, a false arrest claim requires the plaintiff to prove that the arresting officer lacked both good faith and probable cause when making an arrest. *Pierson v. Ray*, 386 U.S. 547, 557-59 (1967). However, an "arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to §1983." *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979).

In the present case, the Youngstown Police Department arrested Plaintiff on an arrest warrant that the Akron Police Department issued on October 17, 2007 for the murder of Javan Rogers. Acting pursuant to a facially valid arrest warrant, the Youngstown Defendants are therefore entitled to qualified immunity in regards to Plaintiff's false arrest and false imprisonment claims. Lastly, the record lacks any evidence showing that the Youngstown Defendants' arrest and subsequent imprisonment of the Plaintiff was objectively unreasonable. Therefore, Plaintiff's §1983 claims of false arrest and false imprisonment are hereby dismissed.

### 2. §1983: Malicious Prosecution

Plaintiff next asserts a violation of the Fourth Amendment under the rubric of a malicious prosecution claim. The Sixth Circuit does recognize a constitutional claim for malicious prosecution in violation of the Fourth Amendment, but the Circuit has not determined the elements for a federal malicious prosecution claim. *Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003); *see also Briner v. City of Ontario,* 370 Fed.Appx. 682, 701-02 (6th Cir. 2010). However, the Sixth Circuit has held that a "police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful." *Kinkus v. Village of Yorkville, Ohio,* 289 Fed.Appx. 86, 91 (6th Cir. 2008). In addition, other jurisdictions have held that plaintiffs cannot bring malicious prosecution claims against police officers unless the officers *knowingly* provided false information to the prosecutor. *Kossler v. Crisanti*, 564 F.3d 181, 198 (3rd Cir. 2009) (emphasis added.); *see also Deskovic v. Peekskill*, 2012 WL 4435316, *8 (S.D.N.Y. 2012).

In the present case, the Youngstown Defendants were not responsible for the decision to prosecute the Plaintiff. The decision to prosecute lies with the county prosecutor. At the time that the Defendants shared information with the Mahoning County prosecutor, they stated the truth as they believed it to be: that the shell casing recovered at the Rogers murder scene matched the gun found in Plaintiff's possession during his 2002 arrest. Upon receiving this evidence, the Mahoning County prosecutor decided to present it to the Grand Jury, who then issued an indictment.

Nothing in the record indicates that the information that the YPD submitted to the Summit County prosecutor was intentionally untruthful or misleading. Though Sgt. Kelty and

10

the BCI technician discussed a possible discrepancy when the Plaintiff's firearm did not match the Turner casing, there was no indication at that time that Sgts. Kelty and Morales were aware that the respective shell casings were in the incorrect envelopes.  The record reflects that Sgts. Kelty and Morales were not aware that the shell casings had been inadvertently switched until after the prosecutor dismissed the charges against the Plaintiff in April of 2008.  See Exhibit A at ¶16; A1.

Therefore, the malicious prosecution claim against the Youngstown Defendants is foreclosed.  With nothing in the record indicating that Sgts. Kelty and Morales knowingly or recklessly forwarded untrue information to the prosecutor, this Court finds insufficient evidence to signify that the sergeants' conduct was objectively unreasonable.  Thus, Defendants are entitled to qualified immunity on Plaintiff's malicious prosecution claim.  Defendants' Motion for Summary Judgment as to Plaintiff's malicious prosecution claim is granted.

### 3.  §1983: Fabrication of Evidence

Plaintiff also alleges that the Youngstown Defendants fabricated evidence by intentionally switching the bullet casings from the Rogers and Turner crime scenes in order to secure his conviction for both crimes.

The Sixth Circuit has held that "a person's constitutional rights are violated when evidence is *knowingly* fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Gregory v. City of Louisville,* 444 F.3d 725, 737 (6th Cir. 2006). (emphasis added.)  As articulated in *Richardson v. Nasser,* No. 08–12951, 2009 WL 4730446, *6 (E.D. Mich. 2009) aff'd, 421 Fed. Appx. 611 (6th Cir. 2011)(unpublished), "a plaintiff must prove that (1) a fabrication of evidence occurred and (2) the defendant was aware

of the fabrication. Even then, not all cases of fabrication of evidence are actionable.  If the fabricated evidence does not effect a jury's decision, a plaintiff cannot prevail." *Id.* (internal citation omitted).

In the present case, Plaintiff's fabrication of evidence claim fails for two key reasons. First, as discussed above, the record fails to show that any of the Youngstown Defendants knowingly or intentionally mishandled the shell casings that were collected from the Rogers and Turner crime scenes.  Secondly, the Summit County prosecutor dismissed the charges against the Plaintiff upon learning that the casings from the respective crime scenes had been inadvertently switched.  Because of the dropped charges, the criminal case against the Plaintiff for the murder of Javan Rogers failed to make it to the jury.  Because there was no jury decision for the alleged fabricated evidence to affect, Plaintiff's fabrication of evidence claim must fail.  As such, Plaintiff's constitutional rights were not violated.

Defendants are therefore entitled to qualified immunity in regard to Plaintiff's fabrication of evidence claim and the Motion for Summary Judgment as to Plaintiff's fabrication of evidence claim is granted.

### 4.  §1983: Substantive Due Process Violation

Plaintiff's final §1983 claim asserts that the Youngstown Defendants denied his substantive due process rights.

"Substantive due process prohibits the government's abuse of power or its use for the purpose of oppression." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996).  Due Process claims involve official acts that cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993).  The test for substantive due process violations is whether the conduct complained of "shocks the conscience" of the court. *McMaster v. Cabinet*

*for Human Resources,* 824 F.2d 518, 522 (6th Cir.1987) (citing *Rochin v. California,* 342 U.S. 165, (1952)).  A citizen, however, does not suffer a constitutional deprivation every time he or she is subjected to some form of harassment by a government agent.  *United States v. Salerno*, 481 U.S. 739, 833 (1987).  Rather, the conduct must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.*

Here, Plaintiff has failed to illustrate the denial of any fundamental right that was deprived to him as a result of the Youngstown Defendants' actions. Plaintiff's substantive due process claim fails because the record does not show any evidence showing that this judicially recognized fundamental right was violated.  None of Plaintiff's other §1983 claims may be brought under the shield of substantive due process because another constitutional provision provides an "explicit source of constitutional protection" for those respective claims.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  Plaintiff's §1983 claims for false arrest, false imprisonment, malicious prosecution, and fabrication of evidence all fall under the protection of the Fourth Amendment.

Moreover, a review of the record does not expose any action taken by the Defendants that "shock the conscience" of this Court.  Unknown personnel within the YPD **inadvertently** switched the bullet casings from the Rogers and Turner crime scenes prior to sending them to the BCI for testing.  Sgts. Kelty and Morales then forwarded the BCI's testing results to the Mahoning County prosecutor.  The record reflects that neither Sgt. Kelty nor Sgt. Morales knew that the bullet casings had been switched until after the Mahoning County prosecutor dismissed the murder charges against the Plaintiff in his 2008 criminal trail.  Plaintiff has been unable to prove by pointing to the record that the Defendants acted any other way than in good faith upon

13

the information that they received.  Rather, the record illustrates that the bullet casings from the Rogers and Turner crime scenes were switched as the result of human error.  In this Court's determination, no rational juror could find for the Plaintiff that such a mistake satisfies the "shocks the conscience" standard that is required to prove a substantive due process violation.

Defendants are entitled to qualified immunity in regards to Plaintiff's substantive due process violation claim and summary judgment is granted in favor of Defendants as to Plaintiff's substantive due process violation claim.

### D.  <u>State Law Claims & Qualified Immunity</u>

Ohio Revised Code §2744.03(A)(6) provides for individual immunity for political subdivision employees.  This statute provides in relevant part:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> (6)…the employee is immune from liability unless one of the following applies:
> (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibility;
> (b) an employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) liability is expressly imposed upon the employee by a Section of the Revised Code…

Neither O.R.C. §2744.03(A)(6)(a) nor (c) is applicable to the present case.  Therefore, the immunity afforded to the Defendants under O.R.C. §2744.03(A)(6) can only be overcome if their actions were "with a malicious purpose, in bad faith, or in a wanton or reckless manner."

Malice is defined as "the state of mind under which a person's conduct is characterized by hatred, ill-will or a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Preston v. Murty*, 32 Ohio St.

3d 334 (1987). Bad faith is defined as "a dishonest purpose, a moral obliquity, conscious wrong-doing, breach of a known duty through some ulterior motive, or ill-will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Kalain v. Smith*, 25 Ohio St. 3d 157, 159, nt. 1 (1986). Wanton conduct is the failure to exercise any care whatsoever towards someone to whom a duty of care is owed under circumstances in which there is a great probability that harm will result. *Hawkins v. Ivy*, 50 Ohio St. 2d 114, 117-118 (1977). Reckless conduct occurs when an individual perversely disregards a known risk. *Poe v. Hamilton*, 56 Ohio App. 3d 137, 138 (1990).

Nothing in the record indicates that the Defendants, either collectively or individually, acted maliciously, in bad-faith, or in a wanton or reckless manner. Moreover, the inadvertent mishandling of the evidence by the YPD does not meet the high legal standards of either maliciousness or bad-faith conduct.

This Court also finds that the Defendants' mishandling of the evidence does not meet the legal standards of either "wanton" or "reckless" conduct. The Ohio Supreme Court has held that "…mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor. Such perversity must be under such conditions that the action must be conscious as conduct will in all probability result in injury." *Fabrey v. McDonald Police Dept.*, 70 Ohio St. 3d 351, 356 (1994). Plaintiff acknowledges that he named Officers Patton, Ciavarella, DeMatteo, and Andrews in the present lawsuit solely because they were in the evidentiary chain of custody. Again, nothing in the record reveals that Defendants' conduct was intentional, let alone perverse. The mere fact that a state official had access to and, therefore may have had an opportunity to distort physical evidence fails to establish that these defendants acted in a wanton or reckless manner.

15

There is also no evidence that either Sergeant Kelty or Sergeant Morales acted wantonly or recklessly.  Neither of the sergeants was aware of the mishandling of the shell casings until after the trial court had dismissed the murder charges against the Plaintiff; this fact illustrates that neither sergeant disregarded a **known** risk.  Because the sergeants were unaware of the risk that the shell casings from the Rogers and Turner crime scenes had been switched, they also were unaware that the mix up in the evidence would result in injury to the Plaintiff.

Because Plaintiff has failed to show that the Defendants are not entitled to qualified immunity under §2744.03(A)(6) of the Ohio Revised Code, the Defendants are entitled to immunity on all state law claims in Plaintiff's Complaint.

Because Defendants are entitled to qualified immunity on the state law claims, the Court need not review the merits of these claims. However, as set forth below, the Court finds that Plaintiff's state law claims also fail on the merits.

## 1.  State Law Claim: Defamation Claim

Plaintiff claims that Lieutenant Hughes defamed him upon his release from prison in 2008.  Specifically, Plaintiff asserts that Lieutenant Hughes implied that he (Plaintiff) was guilty of murdering Javan Rogers and that his release from prison was solely on a technicality.

Defendants' Motion for Summary Judgment correctly points out that Plaintiff's defamation claim against Lieutenant Hughes is time-barred by Ohio Revised Code §2305.11(A), which set a one-year limitations period for slander and libel.[2] Plaintiff in this matter alleges that Lieutenant Hughes uttered the defamatory statement upon his release from prison in April of 2008.  However, Plaintiff did not file his Complaint until February of 2010, nearly 10 months

---

[2] The one-year statute of limitations for libel and slander (O.R.C. §2305.11(A)) is also applicable to defamation claims. See *Cramer v. Fairfield Med. Ctr.,* 182 Ohio App.3d 653, 667, 2009-Ohio-3338, 914 N.E.2d 447

after the permitted statutory period for asserting his defamation claim.  As such, Plaintiff's defamation claim against Lieutenant Hughes is barred by the statute of limitations.

Even if Plaintiff's defamation claim was timely, the claim fails on the merits.  To prove defamation in the State of Ohio, the injured party must show: (1) a false and defamatory statement was made about plaintiff; (2) the statement was published without privilege to a third party; (3) it was made with fault of at least negligence on the part of the defendant; and (4) it was either defamatory per se or caused special harm to the plaintiff.  *Baxter v. Sandusky Newspapers, Inc.*, 6th Dist. No. E-11-006, 2012 Ohio 1233 (Mar. 23, 2012).  Plaintiff in this case fails to satisfy the first element of this cause of action.  Nothing in the record indicates that Lieutenant Hughes even made a statement concerning the Plaintiff's release from prison in April of 2008, let alone that it was false or defamatory.  Absent any proof in the record to the contrary, Plaintiff's defamation claim must be dismissed on the merits as well.

### 2.  State Claim: False Arrest & False Imprisonment

Plaintiff's state law claims for false arrest and false imprisonment are time-barred by Ohio Revised Code §2305.11(A).  Because false arrest includes false imprisonment, the one-year statute of limitations that applies to a claim of false imprisonment also applies to false arrest claims.  *Mayes v. Columbus* (1995), 105 Ohio App.3d 728, 746, 664 N.E.2d 1340.

Ohio courts recognize that a cause of action for false arrest accrues on the day of the arrest in question.  *Id.*  The YPD arrested Plaintiff on October 17, 2007 for the murder of Javan Rogers.  Ohio no longer recognizes incarceration as a valid incapacity that warrants the tolling of the applicable statute of limitations.  *Goins v. Atty. Gen.*, 2003-Ohio-2177, *4 (April 9, 2003).  Plaintiff therefore had until October 17, 2008 to file suit for false arrest.  Because Plaintiff did not file the present lawsuit until February of 2010, his claim is time-barred.  As a result,

17

Defendants' Motion for Summary Judgment as to Plaintiff's state law false arrest claim is granted.

Under Ohio law, the statute of limitations for false imprisonment generally accrues when the aggrieved party is released from confinement. *Cummins v. Madison Corr. Inst.*, 10th Dist. No. 10AP-769, 2011-Ohio-1608, *2.  Here, Plaintiff was released from prison in April of 2008. Therefore, Plaintiff had until April of 2009 to bring suit under Ohio law for false imprisonment. Plaintiff did not file the present lawsuit until February of 2010, past the expiration date of the one year limitations period under O.R.C. §2305.11(A).  Accordingly, Plaintiff's state law false imprisonment claim is time-barred. Defendants' Motion for Summary Judgment as to Plaintiff's state law false imprisonment claim is granted.

Plaintiff's state law claims of false arrest and imprisonment would also fail on the merits. The elements of false arrest and false imprisonment claims are essentially the same.  *Walker v. Kroger's*, L-93-162, 1994 WL 159764, *2 (Ohio App. 6th Dist. 1994).  A false arrest or false imprisonment claim is "made by showing (1) that the person conducting the arrest or imprisonment, or both, had no legal authority to do so and (2) that the arrest or detention, or both, was not conducted according to proper legal procedures."  *Id.*  Thus, an arrest and imprisonment executed upon a facially valid warrant is "a complete defense to a claim for false arrest and imprisonment."  *Id.*  "So long as there is a bona fide attempt to charge an offense in the complaint which underlies the issuance of the arrest warrant, the warrant is not void."  *Id.; Click v. Parish* (1950), 89 Ohio App. 318, 327-328, affirmed at (1951) 155 Ohio St. 84.

As discussed in Plaintiff's 42 U.S.C. §1983 false arrest and false imprisonment claims (*supra*), The YPD arrested Plaintiff subject to a valid arrest warrant.  Due to the inadvertent error whereby two shell casings from different crime scenes were swapped prior to being sent for

18

testing, the YPD had probable cause at that moment in time to believe that Plaintiff was responsible for the murder of Javan Rogers.  No evidence in the record leads this Court to believe that the Youngstown Defendants provided the magistrate with fabricated or intentionally misleading information in order to obtain an arrest warrant.  Therefore, no rational juror could find for Plaintiff on his state law false arrest and false imprisonment claims at trial.  Plaintiff's state law false arrest and false imprisonment claims are dismissed.

**3.  State Claim: Malicious Prosecution**

Plaintiff's state law claim for malicious prosecution is also time-barred by O.R.C. §2305.11(A), which sets a one year limitations period for all malicious prosecution claims.  The statute of limitations for malicious prosecution claims begins running once the prosecution terminates in the accused's favor.  *See Froehlich v. Ohio Dept. of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007).  In *Froehlich*, the Ohio Supreme Court looked to the Restatement of Law 2d, Torts (1977) §659 as authority to determine when a criminal proceeding is terminated in favor of the accused.  See *Id.*  The Restatement 2d of Torts §659(c) expressly states that "the formal abandonment of the proceedings by the public prosecutor" terminates a criminal proceeding in favor of an accused party.  See *Id.*

In this case, the Mahoning County prosecutor dropped the criminal charges against Plaintiff in late April of 2008.  The Mahoning County Court of Common Pleas thereby dismissed the criminal charges against Plaintiff without prejudice.  The one-year limitations period for Plaintiff's state law malicious prosecution claim therefore began to run in April of 2008. Because Plaintiff filed the present lawsuit in February of 2010, almost ten months after the expiration of the limitations period, his state law malicious prosecution claim is time-barred and

must be dismissed.  Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's state law malicious prosecution claim is granted.

Plaintiff's state law claim for malicious prosecution also fails on the merits.  The tort of malicious prosecution in a criminal setting requires proof of three essential elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."  *Id.*  The Ohio Supreme Court has defined "malice" for purposes of a malicious prosecution claim as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice."  *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 85, 564 N.E.2d 440.  When determining whether the proceeding was properly instituted, the factfinder must decide whether the person who chose to prosecute had a "valid basis" for instituting the action.  *Id.*  "If the basis for prosecution cannot be shown, those who made the decision will appear to have acted with no basis-that is, maliciously."  *Id.*  In evaluating whether probable cause existed, a court must examine the facts and circumstances "actually known or reasonably within contemplation" of the party that instituted the complaint and must consider what a reasonable person would have believed.  *Nahra v. The Coliseum* (July 14, 1993), 9th Dist. No. 15854, at 10-11.  A malicious prosecution action occurred without probable cause if:

> "the defendants instituted or continued the prosecution without a 'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [was] guilty of the offense with which he [was] charged[.]"  *Mayes,* 105 Ohio App.3d at 737, quoting *McFinley v. Bethesda Oak Hosp.* (1992), 79 Ohio App.3d 613, 617, 607 N.E.2d 936.

Although the prosecution here was terminated in favor of the Plaintiff, there is nothing in the record to demonstrate a genuine question of fact regarding either of the first two elements.  First, the YPD was not responsible for bringing charges against and prosecuting the Plaintiff.

That function of the criminal justice system lies with the county prosecutor.  Moreover, Sergants Kelty and Morales had a "valid basis" for transferring the evidence that they believed to be from the Rogers crime scene to the Summit County prosecutor.  The results from the BCI lab indicated that the shell casing recovered from the Rogers crime scene was fired from the Plaintiff's firearm.  This fact alone established probable cause for a neutral and detached magistrate to issue a warrant for the arrest of the Plaintiff.  The record lacks any showing of malice on the part of the named Defendants in this case.  Instead, the record reflects that human error was responsible for the mix up of the shell casings from the Rogers and Turner crime scenes.  When the prosecutor became aware that there was a switch up in the evidence, the criminal charges against the Plaintiff were immediately dropped and dismissed.  There no evidence in the record indicating that anybody within the YPD acted maliciously by, for example, tampering with evidence or suppressing knowledge of the switched bullet casings in order to secure the arrest or murder conviction of the Plaintiff.

Therefore, this Court finds that no rational juror could find for Plaintiff on his state law malicious prosecution claim at trial.  Plaintiff's state law malicious prosecution claim is hereby dismissed.

### III.  Conclusion

In this case, the Court has reviewed Defendants' motion and applied the above-stated summary judgment standard.  In doing so, the Court finds Defendants' motion well-taken for the reasons stated therein.  Therefore, Defendants' Motion for Summary Judgment is GRANTED in its entirety and all of Plaintiff's claims are dismissed.

IT IS SO ORDERED.

DATE: January 23, 2013                    */s/ John R. Adams*_____
                                          Judge John R. Adams
                                          UNITED STATES DISTRICT COURT